DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ALEXIS LOEB (CABN 269895)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7168
    Facsimile: (415) 436-7234
    alexis.loeb@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 19-707- HSG |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| JAIRO NOEL RODRIGUEZ-MARTINEZ, | Sentencing/change of plea: October 19, 2020 |
| Defendant. | Court: The Hon. Haywood S. Gilliam |

The United States respectfully submits this memorandum in support of its recommendation that the Court sentence defendant to 57 months' imprisonment (the low end of the Guidelines range), to be followed by three years of supervised release, for possession with intent to distribute fentanyl, methamphetamine, and cocaine. The quantity of fentanyl, a remarkably deadly drug, justifies the government's requested sentence, and the low-end recommendation adequately accounts for mitigating factors.

**I.  OFFENSE CONDUCT**

On December 9, 2019, Drug Enforcement Administration (DEA) agents conducting surveillance of Rodriguez-Martinez's residence in Richmond, California, saw Rodriguez-Martinez walk out of the residence and drive away. PSR ¶ 6. California Highway Patrol officers stopped Rodriguez-Martinez's

car, and he gave them an identification with a false name. *Id.* But agents had recognized Martinez-Rodriguez, and a record check revealed an active warrant for his arrest. *Id.* Officers searched him, found $9,390 cash, and then searched the car, where they found fentanyl, pure methamphetamine, and cocaine hidden inside of a canister and speaker, and a notebook with pay/owe information. *Id.*, Plea Agreement ¶ 2. Rodriguez has admitted that the $9,390 was proceeds from the sale of drugs. Plea Agreement ¶ 2. He has also agreed that the drugs had the following approximate weights: 315 grams of fentanyl, 48 grams of pure methamphetamine, and 18 grams of cocaine. *Id.*

## II.     CRIMINAL HISTORY

According to the PSR, defendant has four convictions, none of which are felonies, and all of which occurred over ten years before the instant offense. PSR ¶¶ 26-29. His most recent conviction was a 2009 misdemeanor for possession of a controlled substance. *Id.* ¶ 29.

More recently, in 2016, defendant was arrested in Denver on drug charges. *Id.* ¶ 32. A warrant for failure to appear issued about two weeks later. *Id.* In July of 2016, he was arrested for illegal reentry (he had previously been deported in 2009). *Id.* ¶¶ 31-32. In 2017, defendant was deported to Honduras again, and the case was not resolved; an active warrant exists. *Id.* In February, 2018, Rodriguez-Martinez was arrested in San Francisco on narcotics charges. *Id.* ¶ 37. The case was dismissed in May, 2019. *Id.*

## III.    PROCEDURAL HISTORY

On December 19, 2019, the grand jury indicted Rodriguez-Martinez for three violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C): possession with intent to distribute fentanyl, possession with intent to distribute methamphetamine, and possession with intent to distribute cocaine. PSR ¶ 1. The parties have executed a plea agreement in which Martinez-Rodriguez has agreed to plead guilty to all three counts, and this matter is set for a consolidated change-of-plea and sentencing hearing. Martinez-Rodriguez fulfills the requirements to receive a two-point safety-valve reduction in his offense level. PSR ¶ 15.

## IV.     SENTENCING GUIDELINES CALCULATION

The parties and the PSR agree on the following offense level calculation:

a.     Base Offense Level (U.S.S.G. §2D1.1(c)(5))                                                           30

|   |   |   |   |
|---|---|---|---|
| | | (1,762.14 kg of converted drug weight) | |
| | b. | Safety Valve (U.S.S.G. §§2D1.1(b)(18), 5C1.2(a)) | -2 |
| | c. | Acceptance of Responsibility (U.S.S.G. § 3E1.1)<br>(assuming defendant pleads guilty) | - 3 |
| | d. | Adjusted Offense Level | 25 |

The PSR places defendant in Criminal History Category I, resulting in a Guidelines range of 57-71 months.

## ARGUMENT

### I. LEGAL STANDARD

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider, among other factors, the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1); the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, § 3553(a)(2)(A); the need for the sentence imposed to afford adequate deterrence to criminal conduct, § 3553(a)(2)(B); the need for the sentence imposed to protect the public from further crimes of the defendant, § 3553(a)(2)(C).

### II. SENTENCING RECOMMENDATION

A low-end 57-month sentence appropriately accounts for the Section 3553(a) factors. The nature of the offense, particularly the possession of a large quantity of fentanyl for sale, counsels in favor of a Guidelines sentence. For the same reason, the need to generally deter the sale of such a dangerous substance favors a Guidelines sentence. A low-end sentence is appropriate because the defendant is in Criminal History Category I, although he is not without a criminal history. Moreover, should defendant argue that the likelihood of deportation is a mitigating factor, the government would note that previous deportations have not prevented the defendant from returning to the United States and committing additional crimes.

U.S. SENT. MEM.
CR 19-00707-HSG

Defendant possessed, and intended to sell, over 300 grams of fentanyl when he was arrested. Fentanyl is the most dangerous drug to afflict our community in decades. It is approximately 50 times more potent than heroin and 100 times more potent than morphine.[1] Fentanyl typically is dosed in micrograms (millionths of a gram), see https://www.drugs.com/illicit/fentanyl.html, and there is a high risk of overdose in quantities as small as 250 micrograms or 0.00025 grams, the equivalent of two grains of salt; before an average surgery, anesthesiologists will administer a total of just 50 mcg (0.00005 g) of fentanyl.[2] A dose of 2,000 micrograms – just 2 milligrams (0.002 g) – is almost certainly fatal to those without opioid tolerance.[3] A DEA photo shows what 2 milligrams looks like:

*See* https://www.dea.gov/galleries/drug-images/fentanyl. Every single episode of fentanyl use carries the risk of immediate death.[4] And because fentanyl is a powder, and so potent, it is finding its way into other drugs – including methamphetamine and cocaine, counterfeit pills (such as Xanax), and as a cut to increase the potency of weak heroin – and killing those who never suspected they were ingesting fentanyl. As one doctor explained, the problem of unsuspecting individuals ingesting fentanyl is akin to "ordering a glass of wine and instead getting a lethal dose of pure ethanol."[5]

---

[1] *See Drugs of Abuse, 2017 Edition,* DRUG ENFORCEMENT ADMINISTRATION, *available at* https://www.dea.gov/sites/default/files/sites/getsmartaboutdrugs.com/files/publications/DoA_2017Ed_Updated_6.16.17.pdf#page=40; Fentanyl, CENTERS FOR DISEASE CONTROL AND PREVENTION, *available at* https://www.cdc.gov/drugoverdose/opioids/fentanyl.html.

[2] HARM REDUCTION OHIO, *How Much Fentanyl Will Kill You?, available at* https://www.harmreductionohio.org/how-much-fentanyl-will-kill-you-2/  (last visited Oct. 12, 2020)

[3] *Id.*

[4] Dr. Sarah Wakeman, *Fentanyl: The dangers of this potent 'man-made' opioid*, HARVARD MEDICAL SCHOOL, HARVARD HEALTH PUBLISHING (AUG. 5, 2016), *available at* https://www.health.harvard.edu/blog/fentanyl-dangers-potent-man-made-opioid-2016080510141.

[5] *Id.*

U.S. SENT. MEM.
CR 19-00707-HSG

Fentanyl has become the newest wave of the drug overdose crisis that has gripped this nation for the past two decades and now claims between 65,000 and 70,000 lives each year.[6] While the overall rate of drug overdoses declined in 2018, it rose in California, and, nationwide, the rate of overdose deaths involving synthetic opioids grew, likely driven by fentanyl.[7] According to the CDC, in 2017, there were 28,000 deaths in the United States involving fentanyl and other synthetic opioids, a significant increase from the prior year.[8] In 2018, the numbers rose again, by 10%, to 31,000.[9] There has been a huge spike in the rate of overdose deaths from synthetic opioids in the past five years, increasing from 0.3 per 100,000 standard population in 1999 to 1.0 in 2013, to 1.8 in 2014, 3.1 in 2015, 6.2 in 2016, 9.0 in 2017, and 9.9 in 2018.[10] The CDC has reported that "more than 80% of overdose deaths involved opioids, and most of these deaths specifically involved IMFs [illicitly manufactured fentanyls, including fentanyl and its analogues]."[11] Synthetic opioids (such as fentanyl) accounted for 67% of all opioid-involved deaths in 2018, and for nearly half of all overdose deaths.[12] In short, fentanyl is killing more and more people in the United States.

In the Bay Area, fentanyl overdose deaths are also skyrocketing. Earlier this year, *the San Francisco Chronicle* reported that San Francisco deaths involving the use of fentanyl more than doubled in 2019, from 90 deaths in 2018, to 234 in 2019.[13] The city's chief forensic toxicologist called the

---

[6] See Hedegaard, H., et al, *Drug Overdose Deaths in the United States, 1999-2018*, CENTERS FOR DISEASE CONTROL AND PREVENTION, *available at* https://www.cdc.gov/nchs/data/ databriefs/db356-h.pdf (67,367 deaths in 2018, the most recent year with complete data) (last visited Oct. 12, 2020) ("Hedegaard").

[7] *Id.; see also* CENTERS FOR DISEASE CONTROL AND PREVENTION, "Drug and Opioid-Involved Overdose Deaths –United States, 2017-2018," in *Morbidity & Mortality Weekly Report* (Mar. 20, 2020), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/mm6911a4.htm# (last visited Oct. 12, 2020).

[8] *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *Synthetic Opioid Overdose Data*, *available at* https://www.cdc.gov/drugoverdose/data/fentanyl.html (last visited Oct. 12, 2020).

[9] *Id.*

[10] *Id.*

[11] CENTERS FOR DISEASE CONTROL AND PREVENTION, "Overdose Deaths and Illicit Drugs," *available at https://www.cdc.gov/drugoverdose/pubs/featured-topics/VS-overdose-deaths-illicit-drugs.html* (last visited Oct. 12, 2020).

[12] *Id.; see also Statcast, Week of September 9, 2019*, CENTERS FOR DISEASE CONTROL AND PREVENTION, *available at* https://www.cdc.gov/nchs/pressroom/podcasts/20190911/20190911.htm.

[13] Evan Sernoffsky & John King, *Deaths From Fentanyl, Heroin Soar; 290 Overdoses In S.F. In 19, More Than Double 18 Total; Fentanyl, Heroin Overdoses In San Francisco More Than Doubled In 2019*, SAN FRANCISCO CHRONICLE (Jan. 22, 2020), *available at*

increase in deaths "staggering."[14] There is certain to be another large increase this year: of the 468 people who have died of drug overdoses through August, 319 had fentanyl in their systems.[15] Just two days ago, the *San Francisco Chronicle* ran a headline stating, "Two deaths a day: S.F. drug overdoses fueled by fentanyl are spiking, figures show."[16]

In one particularly tragic recent case, paramedics responded to a Santa Rosa house and found a 13-month-old baby who was dead from fentanyl intoxication. The baby's father, who had purchased the fentanyl in San Francisco, was also found in the home, in acute distress, and died two days later from the same cause. Complaint, *United States v. Zamora et al.*, No. CR-19-681 CRB, Dkt. 1 (N.D. Cal. filed Dec. 11, 2019). This case is but one example; an opioid overdose death – including death from fentanyl – is always awful. Fentanyl is so incredibly dangerous, and its growth is so alarming, that the Court should impose a significant sentence to reflect the harm that Rodriguez-Martinez was poised to cause when he hid over 300 grams of this poison in his car to distribute it in the community. General deterrence also requires a significant sentence: the Court should send a message so that drug dealers will think twice before agreeing to sell this uniquely devastating substance.

While fentanyl is the most lethal drug that Rodriguez-Martinez possessed, and the drug of which he had the largest quantity, he also was arrested with 48.5 grams of pure methamphetamine. Methamphetamine is also a highly addictive dangerous substance that is also growing problem. To take San Francisco as an example, "[d]eaths determined to have been caused by methamphetamine in San Francisco have steadily increased from 1.8 per 100,000 in 2008 to 11.5 in 2017 . . . in 2017, 22 percent of the city's overdose deaths involving cocaine also involved methamphetamine; 35 percent of overdose deaths from fentanyl also involved methamphetamine present in their system."[17] In addition to overdose

---

https://www.sfchronicle.com/bayarea/article/Fentanyl-heroin-overdoses-in-San-Francisco-more-14993628.php.

[14] *Id.*

[15] Heather Knight, *Two deaths a day: S.F. drug overdoses fueled by fentanyl are spiking, figures show,* SAN FRANCISCO CHRONICLE (Oct. 10, 2020), *available at* https://www.sfchronicle.com/bayarea/heatherknight/article/Two-deaths-a-day-S-F-drug-overdoses-fueled-by-15635199.php.

[16] *Id.*

[17] *Overview of Methamphetamine Usage & Trends in SF (April 2019)*, SF DEPARTMENT OF PUBLIC HEALTH, OFFICE OF POLICY AND PLANNING, at 1-4, *available at*

deaths, methamphetamine use is also associated with psychosis and other mental disorders, cardiovascular and renal dysfunction, and infectious disease transmission.[18]

Rodriguez-Martinez's background favors a low-end sentence, but not a variance. He reported using marijuana daily at the time of the offense, but his crime was not motivated by addiction. PSR ¶ 52. Instead, he felt that selling drugs was his only option to earn more money to send to his family. *Id.* The government recognizes that he experienced poverty growing up and lost his brother, but he does continue to have supportive family both in the United States and in Honduras. *Id.* ¶¶ 39-42. And, while defendant is in Criminal History I, he does have a criminal record, including drug charges, albeit nothing resulting in a sentence of longer than six months. *Id.* ¶¶ 26-37. Despite previously vowing to himself that he would not return to the United States again, and that he would not sell drugs again, Rodriguez-Martinez, unfortunately, did both. *Id.* ¶ 46. This admission suggests that Rodriguez-Martinez needs a stronger deterrent, such as a serious custodial term, to ensure that he does not make similar choices again.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendant to a 57-month term of incarceration. The Court should also sentence the defendant to three years' supervised release, no fine, and a $300 special assessment.

Dated: October 12, 2020  Respectfully submitted,

DAVID L. ANDERSON
UNITED STATES ATTORNEY

By:  /s/ *Alexis Loeb*_____
ALEXIS LOEB
Assistant United States Attorney

---

https://www.sfdph.org/dph/files/MethTaskForce/Meeting%201%20Issue%20Brief.pdf.

[18] Christopher M. Jones, Wilson M. Compton, and Desiree Mustaquim, *Patterns and Characteristics of Methamphetamine Use Among Adults — United States, 2015–2018*. CENTERS FOR DISEASE CONTROL AND PREVENTION (March 27, 2020), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/mm6912a1.htm.

U.S. SENT. MEM.
CR 19-00707-HSG